The **STATE** of Ohio, Appellee.

v.

**RIGSBEE**, Appellant.

[Cite as *State v. Rigsbee,* 174 Ohio App.3d 12, 2007-Ohio-6267.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 06–CA–41.

Decided Nov. 21, 2007.

14

Nick A. Selvaggio, Champaign County Prosecuting Attorney, and Scott D. Schockling, Assistant Prosecuting Attorney, for appellee.

Cole Acton Harmon Dunn and Paul J. Kavanaugh, for appellant.

BROGAN, Judge.

{¶ 1} Cheryl Lyn Rigsbee appeals from her convictions and sentence in the Champaign County Court of Common Pleas, wherein she pleaded guilty to one count of aggravated theft of one million dollars or more, one count of tampering with records, and six counts of forgery. Following a hearing, the trial court imposed the maximum sentence on each count. The court further ran Count One, aggravated theft of one million dollars or more, consecutively with Count Five, forgery, but concurrent with all other counts. In total, Rigsbee was sentenced to 15 years in prison. She was also fined $10,000 on all counts except Count Seven, for which she was fined $5,000, and all fines were ordered to run concurrently. Finally, Rigsbee was ordered to pay restitution in the amount of $1,993,982.69.

{¶ 2} The record in the present matter indicates that Rigsbee was employed as an assistant controller and systems administrator by Ultra–Met Carbide Technologies ("Ultra–Met") in Urbana, Ohio, from April 2001 to February 2006. In approximately June 2001, Rigsbee began stealing money from Ultra–Met by forging checks and tampering with company records. Specifically, Rigsbee would make checks payable to herself and then endorse the checks with her supervisor's signature stamp. Each check was made out for less than $10,000 in order to circumvent the company's policy that checks for more than $10,000 required two signatures. Rigsbee would then cash the checks, keeping the money for personal use. When the cancelled checks were returned by the bank, Rigsbee would immediately shred them. She also would alter the information in the company's weekly financial reports before submitting them to her supervisor in order to conceal her wrongdoing.

{¶ 3} On February 13, 2006, Rigsbee's immediate supervisor discovered her unlawful conduct by analyzing cash transactions and comparing checks that had

cleared the bank with the company's check register. He initially found that two checks had been processed by the bank, but neither appeared in the register. Upon further inquiry, Rigsbee's supervisor learned that the checks were made payable to Rigsbee and endorsed using his signature stamp. A subsequent investigation conducted by the company revealed that Rigsbee had forged 235 checks over the five years of her employment with Ultra–Met, totaling $1,933,982.69. Rigsbee spent the money to buy personal items for herself and her family, including, but not limited to, the following: a remodeling of the family residence and purchase of new kitchen appliances and furniture; numerous televisions and other electronics; six automobiles; one sailboat and one power-boat; three motorcycles; 17 firearms; 99 bottles of wine; computer software valued at $9,000; 750 movies on DVD; multiple video gaming systems; new golf clubs and a membership to the Windy Knoll Golf Club; several trips to France, Ireland, Scotland, New York City, and Boston, which included first-class tickets, limousine rentals, reservations at the Ritz Carleton Hotel, and tickets to Broad-way shows; three Rolex watches and two diamond rings; china flatware and silverware; various power tools; payment in full of student loans; payments made on several credit cards; payments for household maintenance services; and $113,071.45 paid to family and friends.

{¶ 4} After the discovery of her theft but prior to sentencing, Rigsbee began making payments of restitution to Ultra–Met. Between June 2006 and Novem-ber 2006, Rigsbee and her husband turned over many of their possessions, including their home, to Ultra–Met in order for the company to recover some of its loss. Rigsbee also secured employment through a temporary placement agency and paid 75 percent of each paycheck to Ultra–Met. In addition, Rigsbee transferred $35,938.25 in February 2006 and $25,000 in March 2006 from her attorney's trust account to the company. In total, Rigsbee paid Ultra–Met $274,553.60 in restitution by the time of the sentencing hearing.

{¶ 5} Rigsbee pleaded guilty to an eight-count bill of information—one count of aggravated theft of one million dollars or more, a first-degree felony; one count of tampering with records, a third-degree felony; and six counts of forgery, five of which were third-degree felonies and one a fourth-degree felony. At the end of the sentencing hearing, the trial court imposed the maximum sentence on each count. The court ran Count One, aggravated theft of one million dollars or more, consecutively with Count Five, forgery, but concurrent with all other counts. As a result, Rigsbee was sentenced to 15 years in prison. The court also imposed a fine of $10,000 on all counts except Count Seven, for which she was fined $5,000, and all fines were ordered to run concurrently. Rigsbee was further ordered to pay restitution in the amount of $1,993,982.69, less the prior restitution payments of $274,553.60 but including $60,000 for expenses incurred by Ultra–Met during

its investigation of the theft. Altogether, restitution amounted to $1,719,429.09. In addition, Rigsbee was ordered to pay a minimum of $1,000 per month toward costs, restitution, and fines beginning two months after her release from prison.

{¶ 6} The trial court journalized its order in an entry dated December 5, 2006. This entry, however, failed to account for the $60,000 in investigatory costs incurred by Ultra–Met. Thus, restitution was ordered in the amount of $1,659,429.09 ($1,933,982.69 minus $274,553.60). On December 27, 2006, Rigsbee filed a notice of appeal from the judgment and sentence of the trial court entered on December 5, 2006. Subsequently, the court filed a journal entry of correction on February 2, 2007. This entry changed the amount of restitution to include the investigatory costs—$1,993,982.69—while maintaining that Rigsbee had made payments totaling $274,553.60. As a result, pursuant to the court's corrected entry, Rigsbee was ordered to pay restitution in the amount of $1,719,429.09. On appeal, Rigsbee has taken issue with the amount of restitution as ordered in the court's February 2, 2007 entry.

{¶ 7} We note that the proper mechanism to correct a finalized entry after a notice of appeal has been filed is to move this court to remand the matter to the trial court so that the corrected entry may be entered. Only upon remand does the trial court regain jurisdiction to amend its final entry. Furthermore, a party must amend its notice of appeal to include the corrected entry. Here, Rigsbee has not moved to amend her December 27, 2006 notice of appeal to include the court's February 2, 2007 journal entry. However, because neither party has raised those arguments, we will construe Rigsbee's notice of appeal as an appeal from the trial court's February 2, 2007 entry setting restitution at the amount of $1,719,429.09 and consider the merits of that order.

{¶ 8} On appeal, Rigsbee assigns the following errors for our review:

{¶ 9} I. "The trial court erred in imposing a fifteen (15) year prison sentence for a felony theft when this sentence is disproportionate to other sentences imposed for similar crimes."

{¶ 10} II. "The trial court erred in making findings of fact that justified a light sentence and then proceeded to·sentence the defendant to a maximum consecutive sentence."

{¶ 11} III. "The trial court erred by imposing the maximum fines and restitution without first considering appellant's ability to pay."

{¶ 12} IV. "The trial court erred in imposing consecutive sentences because a court's power to sentence a person to consecutive sentences is statutory and the statute authorizing consecutive sentences was excised in its entirety by *Foster*."

{¶ 13} Following the Supreme Court of Ohio's opinion in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, this court has established that the standard of review on sentencing issues is abuse of discretion. See *State v. Slone*, Greene App. Nos. 2005 CA 79, 2006 CA 75, 2007-Ohio-130, 2007 WL 92818, at ¶ 7. See, also, *Foster*, paragraph seven of the syllabus. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 14} Upon review of the record, we do not find that the trial court abused its discretion in ordering Rigsbee to serve a sentence of 15 years in prison. The record demonstrates that the trial court properly considered the sentencing guidelines and factors provided in R.C. 2929.11 and R.C. 2929.12 and that the prison term was not beyond the statutory range set forth in R.C. 2929.14. Furthermore, we find that the trial court appropriately considered Rigsbee's present and future ability to pay fines and restitution, including $60,000 in costs incurred by Ultra–Met while investigating the extent of Rigsbee's crime. Finally, we do not find merit in Rigsbee's argument that following *Foster*, trial courts no longer possessed the authority to impose consecutive sentences. Accordingly, the judgment of the trial court will be affirmed.

I

{¶ 15} In order to facilitate the disposition of this appeal, we will consider appellant's first and second assignments together, as they are interrelated. Rigsbee argues in her first assignment of error that her sentence is inconsistent with or disproportionate to similar crimes committed by similar offenders. Specifically, Rigsbee claims that her sentence of 15 years in prison is disproportionate to sentences around Ohio for similar theft offenses, citing *State v. Graor* (1998), 126 Ohio App.3d 488, 710 N.E.2d 785, and *State v. Georgakopoulos* (2003), 152 Ohio App.3d 288, 787 N.E.2d 674. In her second assignment of error, Rigsbee contends that the trial court improperly imposed a maximum consecutive sentence when the sentencing factors and guidelines set forth in R.C. 2929.11 and R.C. 2929.12 do not support such punishment.

{¶ 16} We begin our discussion by finding that Rigsbee has adequately preserved the issue of consistency for appeal. Previously, this court has stated, " '[A]lthough a defendant cannot be expected to produce his or her own database to demonstrate the alleged inconsistency, the issue must * * * be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal.' " *State v. Bell*, Greene App. No. 2004–CA–5, 2005-Ohio-655, 2005 WL

388174, at ¶ 140, quoting *State v. Roberts,* Cuyahoga App. No. 84070, 2005-Ohio-28, 2005 WL 23358, at ¶ 60. In the present case, Rigsbee directed the trial court's attention to *Graor* and *Georgakopoulos* at the sentencing hearing and suggested that the court consider them in determining her sentence. Accordingly, Rigsbee has met the minimal requirement of raising the issue to the trial court that her sentence is inconsistent with those imposed on other offenders convicted of similar offenses.

{¶ 17} R.C. 2929.11(B) provides, "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and *consistent with sentences imposed for similar crimes committed by similar offenders.*" (Emphasis added.) "[T]he purpose of the consistency provision in R.C. 2929.11(B) is to reduce the likelihood that disparity will exist among offenders with similar characteristics who commit similar crimes but are sentenced either at different times or by different judges." Griffin & Katz, Ohio Felony Sentencing Law (2007) 954–955, Section 5:56.

{¶ 18} In order to fulfill the purpose of R.C. 2929.11(B), consistency is best achieved by maintaining a compilation of cases from within the reviewing district rather than individual examples from other districts. Id. at 958. This maxim rings true especially when first offenders have committed extremely serious crimes, because these cases extend beyond those demonstrating routine patterns. Id. at 960. Thus, courts in Ohio have been reluctant to base their sentencing decisions solely on the comparison of relatively few cases or allegedly similar cases from various districts around the state. See *State v. Johnson,* Cuyahoga App. No. 80533, 2002-Ohio-5960, 2002 WL 31429765, at ¶ 32 (finding that citation of only three cases that the appellant asserted were similar to his own was not sufficient for the court to find that his sentence was disproportionate); *State v. Ryan,* Hamilton App. No. C–020283, 2003-Ohio-1188, 2003 WL 1094003, at ¶ 12 (providing that "a random list of citations to appellate decisions is of dubious value * * * since it does not necessarily take into account all the unique factors that may distinguish one case from another. Indeed, to rely on appellate cases alone excludes cases involving sentences that have not been appealed or that have resulted from agreements involving guilty or no-contest pleas"). Instead, determining consistency through comparative cases is simply a starting point and only one consideration a trial court must make in its sentencing decision. To truly demonstrate that a sentence is inconsistent within the meaning of R.C. 2929.11(B), a defendant must also establish that the trial court failed to consider the overriding purposes of public protection and punishment set forth in R.C. 2929.11(A), the principles of reasonableness and proportionality

provided in R.C. 2929.11(B), the seriousness and recidivism factors contained in R.C. 2929.12, the sentencing guidelines for various specific offenses and degrees of offenses under R.C. 2929.13, and the assignment of prison terms pursuant to R.C. 2929.14. See Griffin & Katz at 957. See, also, *State v. Quine*, Summit App. No. 20968, 2002-Ohio-6987, 2002 WL 31829175, at ¶ 13; *State v. Spradling*, Montgomery App. No. 20960, 2005-Ohio-6683, 2005 WL 3455115, at ¶ 6.

{¶ 19} Here, Rigsbee presented the trial court with two theft cases at the sentencing hearing, suggesting that the court consider the sentences in each case when imposing Rigsbee's sentence. We will consider the relevance of these cases as the starting point of our analysis. In *State v. Georgakopoulos*, 152 Ohio App.3d 288, 2003-Ohio-1531, 787 N.E.2d 674, the defendant was indicted on 107 counts – one count of engaging in a pattern of corrupt activity, a first-degree felony; 21 counts of theft of money in amounts between $5,000 and $100,000, a fourth-degree felony; 21 counts of gambling, a first-degree misdemeanor; 21 counts of operating a gambling house, a first-degree misdemeanor; 42 counts of money laundering, a third-degree felony; and one count of possessing criminal tools, a first-degree misdemeanor. Id. at ¶ 4. Pursuant to a plea agreement in which the state agreed to recommend imposition of a sentence of the minimum amount of incarceration for the most serious offense—i.e., three years—the defendant pleaded guilty to one count of engaging in a pattern of corrupt activity, 21 counts of operating a gambling house, and three counts of money laundering. Id. at ¶ 5. Under the plea agreement, the remaining counts were dismissed. Id.

{¶ 20} Following a sentencing hearing, the trial court ordered the defendant to serve six years on the count of engaging in a pattern of corrupt activity, three years on each count of money laundering, and six months on each count of operating a gambling house. Id. at ¶ 24. Each count was to run concurrently for a total of six years. Id. According to the court, the recommended sentence of three years did not adequately punish the defendant, nor did it protect the citizens of the state from the defendant's "predator" [sic] nature. Id. at ¶ 23. The trial court's judgment was affirmed on appeal.

{¶ 21} We are not persuaded by Rigsbee's argument that *Georgakopoulos* demonstrates a failure on the part of the trial court to impose a proper sentence in the present matter. First, the amount of money at issue differed significantly. In *Georgakopoulos*, the evidence demonstrated that the defendant had deposited approximately one million dollars into his bank account. Id. at ¶ 13. Any additional amounts of money involved were based on speculation, for the state had been unable to discover a large portion of the money due to the defendant's criminal activities. Id. Here, through the investigation of the state and Ultra–Met, the amount at issue was determined to be $1,933,982.69, nearly twice as much. Furthermore, the conduct at issue is disparate. As noted by the trial

court, Rigsbee took advantage of her position of trust to deceitfully rob the company and its other employees of money that was rightfully theirs, all for the sake of self-gratification. In doing so, she caused the company to extend its line of credit to a maximum limit, a move that invariably delayed any future investments and the small company's ability to expand. This conduct lasted for a period of five years once Rigsbee discovered how "easy" it was to deceive those around her. Although also reprehensible, the conduct of the defendant in *Georgakopoulos* did not place at risk the very entity that had entrusted the defendant with access to its financial operations. There, the defendant and three members of his family ran illegal gambling events for a year and a half that falsely advertised under the name of local charities. Id. at ¶ 13. The charities themselves received very little to none of the profits; instead, the defendant deposited the earnings into his "enterprise's" bank accounts. Id. Unlike the victims in the present matter—Ultra-Met, its investors, and its employees—the victims in *Georgakopoulos* were the members of the public who had voluntarily chosen to partake in the events, although with the intention that their contributions would go to charity.

{¶ 22} Likewise, we do not find Rigsbee's argument compelling that *State v. Graor* (1998), 126 Ohio App.3d 488, 710 N.E.2d 785, demonstrates the trial court's failure to comply with the consistency principle in R.C. 2929.11(B). In that case, the defendant pleaded guilty to ten counts of theft, five of which were felonies of the second degree, as a result of his involvement in " 'a series of fictitious requests for reimbursement [from his employer, the Cleveland Clinic Foundation] and the diversion of money from certain research grants.' " Id. at 491, 710 N.E.2d 785. Pursuant to a plea agreement, the trial court sentenced the defendant to a total of three years' incarceration. Id. at 489, 710 N.E.2d 785. Most notably, this case is distinguishable from the instant one by the fact that the sentence was imposed within the boundaries of a plea agreement. Under such circumstances, a trial court acts within its discretion to impose a sentence based on the recommendation of the state. Doing so, however, leaves the record devoid of an accurate consideration of the sentencing guidelines. See *State v. Ryan*, Hamilton App. No. C–020283, 2003-Ohio-1188, 2003 WL 1094003, at ¶ 12. We are further persuaded by the state's argument that because *Graor* precedes the enactment of Ohio's felony sentencing structure, Am.Sub.S.B. No. 2, its comparative value is speculative, at best. The Supreme Court of Ohio characterized the prior felony sentencing structure as "predominantly indeterminate" and lacking the certainty and proportionality that S.B. 2 was enacted to provide. See *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 34. Accordingly, we find very little guidance in Rigsbee's reference to both *Georgakopoulos* and *Graor*.

{¶ 23} As we stated above, reliance on comparative cases alone is insufficient to demonstrate that the trial court imposed an improper sentence. As a reviewing court, we must consider the entire record to determine what facts support the relevant sentencing guidelines set forth in R.C. 2929.11, 2929.12, 2929.13, and 2929.14. Moreover, this court has held that a silent record raises the presumption that a trial court considered the statutory factors and guidelines. *State v. Slone*, Greene App. Nos. 2005 CA 79 and 2006 CA 75, 2007-Ohio-130, at ¶ 20, citing *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361. "If a trial court's sentence is within the statutory limits, it will be presumed that the trial court considered the relevant factors in the absence of an affirmative showing that it failed to do so." Id., citing *State v. Crouse* (1987), 39 Ohio App.3d 18, 20, 528 N.E.2d 1283. Here, the record shows that there are several factors indicating that Rigsbee's conduct was more serious than conduct normally constituting the offense. R.C. 2929.12(B). Ultra–Met suffered serious economic harm as a result of the theft—nearly two million dollars—extending its credit capacity to its limits and impeding most forms of company growth. R.C. 2929.12(B)(2). Also, Rigsbee abused her position as an assistant controller and systems administrator to facilitate the theft, having direct access to the company's bank accounts and utilizing the signature stamp of her supervisor to conceal her wrongdoing. R.C. 2929.12(B)(4). This position was based on trust that Rigsbee would look out for Ultra–Met's well-being. R.C. 2929.12(B)(5). Committing the crimes, Rigsbee violated this trust bestowed upon her by her supervisor, along with her fellow employees and all who were associated with Ultra–Met. R.C. 2929.12(B)(6). Notably, there are no factors under R.C. 2929.12(C) indicating that Rigsbee's conduct was less serious than conduct normally constituting the offense that would weigh against imposition of the trial court's sentence.

{¶ 24} Turning to the recidivism factors in R.C. 2929.12(D), we agree that the factors in R.C. 2929.12(E), which indicate that Rigsbee is not likely to reoffend, outweigh the "likely" factors of R.C. 2929.12(D). In fact, the court expressly makes reference during the sentencing hearing to those findings:

{¶ 25} "Very unusual combination of circumstances in the case [sic] a lack of criminal history, the extent of Rigsbee's criminal activity at the present time, the extent of [Rigsbee's] acknowledgment of wrongdoing, all of them combine to make it a very difficult assignment to assess an appropriate punishment." However, the trial court was authorized to act within its discretion in weighing these factors, along with the other statutory guidelines, and imposing an appropriate sentence. See *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 37. We cannot say that the evidence does not support the trial court's decision.

{¶ 26} The trial court in the present matter stated that it had considered the purposes and principles in sentencing and the concepts of proportionality before

sentencing Rigsbee to a term of 15 years in prison. Given the nature of the criminal conduct and the amount of money involved, we find that the record supports the conclusion that the trial court properly considered the sentencing guidelines set forth in R.C. 2929.11 and 2929.12. Thus, there was no abuse of discretion. We further find that the sentence was appropriate under R.C. 2929.14, setting the maximum prison term at ten years for first-degree felonies and five years for third-degree felonies.

{¶ 27} Accordingly, Rigsbee's first and second assignments of error are overruled.

## II

{¶ 28} Rigsbee argues in her third assignment of error that the trial court failed to consider her ability to pay before imposing fines totaling $10,000 and restitution in the amount of $1,933,982.69.[1] Furthermore, Rigsbee contends that the trial court lacked the authority to order her to pay $60,000 as part of her restitution amount in an effort to compensate Ultra–Met for investigatory costs. For the following reasons, we find that both of these arguments lack merit.

{¶ 29} First, R.C. 2929.19(B)(6) provides that a trial court must consider an offender's present and future ability to pay before imposing a financial sanction under R.C. 2929.18. This court has previously found that "[t]he trial court does not need to hold a hearing on the issue of financial sanctions, and there are no express factors that the court must take into consideration or make on the record." (Citation omitted.) *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, at ¶ 57. However, we have further stated that the record should contain " 'evidence that the trial court considered the offender's present and future ability to pay before imposing the sanction of restitution.' " Id., quoting *State v. Robinson*, Hancock App. No. 5–04–12, 2004-Ohio-5346, 2004 WL 2260101, at ¶ 17. In *State v. Parker*, Champaign App. No. 03CA0017, 2004-Ohio-1313, 2004 WL 541116, this court upheld financial sanctions when the record consisted of documentation of a defendant's financial affairs, including a presentence investigation report, and the record demonstrated that the trial court considered the presentence investigation report for sentencing purposes. Id. at ¶ 45. See, also, *Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, at ¶ 59 (upholding financial sanctions when the record indicated that the trial court considered the appellant's present employment, his employment history, his

---

1. We note that this restitution amount corresponds with the court's initial judgment entry filed December 5, 2006. However, in light of the aforementioned discussion, the correct figure regarding restitution should be $1,993,982.69.

ability to maintain employment, and his assets, and when the court deferred payments until two months following the appellant's release from prison).

{¶ 30} Here, Rigsbee argues that the trial court was required to expressly refer to the presentence investigation report at the sentencing hearing in order to satisfy R.C. 2929.19(B)(6). Such an oversight, however, does not constitute reversible error when there is ample evidence in the record from which this court can infer that the trial court properly considered Rigsbee's present and future ability to pay. In the sentencing entry, the court noted that it had been provided a presentence investigation report. This document contains details of Rigsbee's employment history, including her temporary employment status at the time of sentencing; information about her educational background; indicators that she is in good physical and mental health; and facts regarding her present financial condition, i.e., her total monthly income and total monthly expenses. The court additionally inquired about Rigsbee's employment history at the sentencing hearing. Furthermore, the entry, as well as the transcript from the sentencing hearing, notes the amount of restitution that Rigsbee had paid up to the time of sentencing. Reflected in that amount are the payments Rigsbee made from June 2006 while employed through a temporary agency. Finally, the trial court set Rigsbee's restitution payments at a minimum of $1,000 per month and deferred the start of the payment period until two months following her release from prison. Under the circumstances, we conclude that the trial court sufficiently considered Rigsbee's present and future ability to pay.

{¶ 31} Next, Rigsbee argues that the trial court lacked the statutory authority to order her to pay $60,000 for Ultra–Met's expenses investigating the theft. According to Rigsbee, Section 2929.18 of the Ohio Revised Code, which grants courts the power to order restitution, does not authorize a court to order restitution for private investigation in a criminal case. She further asserts that investigatory costs of administrative agencies cannot be the basis of a restitution order and that the state, by allowing Ultra–Met to conduct its own investigation, was violating this rule.

{¶ 32} To support her argument, Rigsbee cites *State v. Hooks* (2000), 135 Ohio App.3d 746, 735 N.E.2d 523. This case, however, stands for the proposition that " 'a sentencing court cannot order a defendant to pay restitution for a crime for which he was not convicted.' " (Citations omitted.) Id. at 749, 735 N.E.2d 523. There, the defendant was ordered to pay restitution to the Ohio State Board of Cosmetology for 140 administrative hearings relating to all 12 of the defendant's violations. Id. However, the defendant was found guilty of only seven violations. Id. According to the Tenth District, the restitution amount improperly included payment for crimes that the defendant was not convicted of or sentenced for. Id. At issue was not whether the trial court had the statutory authority to award

restitution to the state agency. Therefore, we do not find *Hooks* applicable to the present matter.

{¶ 33} Instead, we are persuaded by the state's argument that R.C. 2929.18(A)(1) permits the trial court to order Rigsbee to pay Ultra–Met $60,000 for the cost of its investigation. R.C. 2929.18(A)(1) provides that a trial court may sentence a felony offender to the following financial sanction:

{¶ 34} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."

{¶ 35} Here, $60,000 is an economic loss suffered by Ultra–Met as a direct result of Rigsbee's crimes. "Economic loss" is defined as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense * * *." R.C. 2929.01(M). In order to determine the impact of Rigsbee's criminal acts on the company's financial condition, it was necessary for Ultra–Met to conduct an investigation of the thefts. This investigation was vital to the company's ability to estimate the damage and determine the loss, if possible. As the $60,000 cost constitutes further economic loss suffered by Ultra–Met as a direct and proximate cause of Rigsbee's wrongdoing, the trial court properly exercised its statutory authority to order restitution in such amount.

{¶ 36} Furthermore, the amount of restitution ordered by the trial court was supported by competent, credible evidence. See *State v. Banks,* Montgomery App. No. 20711, 2005-Ohio-4488, 2005 WL 2077790, at ¶ 6. At the sentencing hearing, the prosecutor presented evidence of the $60,000 figure, which reflected

the amount tendered by Ultra–Met in its victim impact statement. Rigsbee does not dispute this amount.

{¶ 37} Accordingly, Rigsbee's third assignment of error is overruled.

### III

{¶ 38} Under her fourth assignment of error, Rigsbee contends that the trial court lacked the authority to impose consecutive sentences because the statute authorizing consecutive sentences, R.C. 2929.41(A), was excised in its entirety by *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Several appellate courts in Ohio have addressed the same issue but have rejected the appellants' argument, finding that a trial court's authority to impose consecutive sentences has, indeed, survived the Supreme Court's ruling in *Foster.* See *State v. Worrell,* Franklin App. No. 06AP–706, 2007-Ohio-2216, 2007 WL 1346580; *State v. Gonzales,* Hancock App. No. 5–06–43, 2007-Ohio-3132, 2007 WL 1805073. Adopting these courts' rationale, we find that Rigsbee's argument herein lacks merit.

{¶ 39} In *State v. Worrell,* the Tenth District provided the following:

{¶ 40} "Before the *Foster* decision, judicial fact-finding was required before consecutive sentences could be imposed, except when certain enumerated statutes imposing nondiscretionary consecutive terms applied. See *Foster,* [109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470] at ¶ 66. In *Foster,* the Supreme Court of Ohio, following *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531[, 159 L.Ed.2d 403], and *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348[, 147 L.Ed.2d 435], found portions of Ohio's felony sentencing scheme, including 2929.14(E)(4) and 2929.41(A), unconstitutional because those portions required judicial fact-finding in violation of a defendant's Sixth Amendment right to a trial by jury. Concluding that R.C. 2929.14(E)(4) and 2929.41(A) were capable of being severed, the Supreme Court of Ohio severed in their entirety these statutory sections. *Foster,* [109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470] at ¶ 97, 99; and paragraph four of the syllabus.

{¶ 41} "In view of the *Foster* court's severance of the unconstitutional provisions, '[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.' Id. at paragraph seven of the syllabus. The *Foster* court additionally stated: 'If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively.' Id. at ¶ 105.

{¶ 42} "Thus, pursuant to *Foster,* trial courts generally have the discretionary power to impose consecutive sentences. See *State v. Saxon,* 109 Ohio

St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 9, citing *Foster* ('Only after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively.') Notwithstanding that general rule, there still remain circumstances that require the imposition of consecutive sentences. See *Foster*, [109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470] at ¶ 66, citing R.C. 2929.14(E)(1) through (3). In those circumstances, a trial court lacks discretion regarding whether to impose consecutive or concurrent sentences. See *Foster*, at ¶ 66. Nonetheless, this case does not involve one of those circumstances. Thus, pursuant to *Foster*, the trial court in this case had discretion as to whether defendant should serve his sentences consecutively or concurrently.

{¶ 43} "However, according to defendant, the trial court lacked the authority to impose consecutive sentences. Thus, despite the *Foster* decision, defendant urges this court to find that the trial court in this case acted contrary to law by imposing consecutive sentences. Such a finding would be contrary to the *Foster* decision. As an intermediate appellate court, we will not make a determination that conflicts with a decision of the Supreme Court of Ohio that has not been reversed or overruled. 'A court of appeals is bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled.' *Sherman v. Millhon* (June 16, 1992), Franklin App. No. 92AP–89, 1992 WL 142368 [citations omitted].

{¶ 44} "Furthermore, to the extent the *Foster* court did not expressly discuss the source of a trial court's authority to impose consecutive sentences, we note that previous Ohio Supreme Court decisions expressly endorsed the idea that the authority of a court to impose consecutive sentences derives from the common law. In *Henderson v. James* (1895), 52 Ohio St. 242, 254–255, 39 N.E. 805, the Supreme Court recognized the existence of a trial court's inherent power, derived from the common law, to impose consecutive sentences: '* * * As we have no statute authorizing cumulative sentences for crime, it would seem at first blush that such sentences should not be permitted in this state; but this court, with the courts of most of the other states, as well as England, has sustained cumulative sentences without the aid of a statute. * * * The great weight of authority is in favor of cumulative sentences, and they should be upheld on principle. The severe punishments which induced judges to invent technicalities to aid the acquittal of those on trial, on criminal charges, no longer exist; and, under our just and humane statutes, those who violate the law should be duly punished for each offense. * * *' See, also, *State ex rel. Stratton v. Maxwell* (1963), 175 Ohio St. 65, 67, 23 O.O.2d 357, 191 N.E.2d 549 (citing *Henderson* for the proposition that 'a court has the power to impose consecutive sentences'). Moreover, in *Stewart v. Maxwell* (1963), 174 Ohio St. 180, 181, 22 O.O.2d 116, 187 N.E.2d 888,

the Supreme Court stated that 'in the absence of statute, it is a matter solely within the discretion of the sentencing court as to whether sentences shall run consecutively or concurrently.'" *Worrell*, 2007-Ohio-2216, 2007 WL 1346580, at ¶ 7–11.

{¶ 45} In light of the foregoing rationale, we find Rigsbee's argument unpersuasive. Furthermore, we are of the opinion that this conclusion does not contradict the decisions of the United States Supreme Court cited in appellant's brief. See *Missouri v. Hunter* (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (holding that cumulative punishment may be imposed in matters where the legislature specifically authorizes such punishment under two statutes, regardless of whether the two statutes proscribe the "same" conduct under the *Blockburger* test (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306); *Whalen v. United States* (1980), 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (finding that the Double Jeopardy Clause prohibits *federal courts* from imposing consecutive sentences unless authorized by Congress). Accordingly, Rigsbee's fourth assignment of error is overruled.

{¶ 46} Having overruled each of appellant's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

WOLFF, P.J., and GRADY, J., concur.