[Cite as *State v. Rigsbee*, 2013-Ohio-1239.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2012 CA 31 |
| v. | : | T.C. NO.   06CR253 |
| CHERYL L. RIGSBEE | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____29th____ day of ____March____, 2013.

. . . . . . . . . .

KEVIN S. TALEBI, Atty. Reg. No. 0069198, Champaign County Prosecutor, 200 N. Main Street, Urbana, Ohio 43078
          Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 1886 Brock Road N.E., Bloomingburg, Ohio 43106
          Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Cheryl Rigsbee appeals from a judgment of the Champaign County Court of Common Pleas, which denied without a hearing her Crim.R. 32.1 motion to

withdraw her plea after sentencing. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} Rigsbee was accused of stealing money from her employer for approximately five years from 2001 to 2006. "Specifically, Rigsbee would make checks payable to herself and then endorse the checks with her supervisor's signature stamp. Each check was made out for less than $10,000 in order to circumvent the company's policy that checks for more than $10,000 required two signatures. Rigsbee would then cash the checks, keeping the money for personal use. When the cancelled checks were returned by the bank, Rigsbee would immediately shred them. She also would alter the information in the company's weekly financial reports before submitting them to her supervisor in order to conceal her wrongdoing." *State v. Rigsbee*, 174 Ohio App.3d 12, 2007-Ohio-6267, 880 N.E.2d 527, ¶ 2 (2d Dist.).

{¶ 3} Rigsbee's conduct was eventually discovered by her supervisor, and it was reported to the police. The company's investigation revealed that she had forged 235 checks totaling over $1.9 million. Rigsbee spent the money on a wide variety of personal items, trips, payments on student loans, and gifts to family and friends.

{¶ 4} In December 2006, Rigsbee pled guilty to one count of aggravated theft (by deception) of $1 million dollars or more, in violation of R.C. 2913.02(A)(2) and (B)(2), six counts of forgery, in violation of R.C. 2913.31(C)(1), and one count of tampering with records, in violation of R.C. 2913.42(A)(1). The trial court imposed the maximum sentence on each count; it ran the sentences for aggravated theft and one count of forgery consecutively, but concurrently with the sentences in all the other counts, for an aggregate

prison term of 15 years. Rigsbee was also fined and ordered to pay restitution.

{¶ 5}     Rigsbee appealed, raising several issues related to her sentence. We affirmed her conviction. *Rigsbee*, 174 Ohio App.3d 12, 2007-Ohio-6267, 880 N.E.2d 527.

{¶ 6}     In May 2011, Rigsbee filed a motion to withdraw her plea, claiming that at the time of the plea she had never seen the company's forensic accounting audit and, to her knowledge, neither had her attorney. She claimed that the amount of the theft, as established by the audit, "did not match the amount of the checks deposited in [her] personal account" and that "the two sets of checks were never reconciled." Thus, she disputed the accuracy of the amount she was accused of stealing. She claimed that she did not see the checks she had allegedly drawn on the company's accounts until August 2011, when she was represented by different counsel, and that she would not have pled guilty if she had known that her attorney at the time of her plea had not reviewed and reconciled the bank statements and/or checks. She also claimed that she had not understood the nature of a plea to a bill of information.

{¶ 7}     The trial court overruled Rigsbee's motion to withdraw her plea, stating that she had failed to demonstrate a manifest injustice, that her "self-serving statements [were] insufficient to overcome the strong record to the contrary," and that Rigsbee's delay in filing her motion weighed against her credibility.

{¶ 8}     Rigsbee appeals, arguing that the trial court erred in denying her motion to withdraw her plea without a hearing, that she was denied the effective assistance of trial counsel at the time of her plea, and that her plea was not knowingly, intelligently, and voluntarily entered.

{¶ 9} A Crim.R. 32.1 motion to withdraw a guilty plea after sentencing should be granted only to correct a manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977). A hearing on such a motion is required only if the facts alleged by the defendant, if accepted as true, would require the plea to be withdrawn. *State v. McComb*, 2d Dist. Montgomery Nos. 22570, 22571, 2009-Ohio-295, ¶ 19. The motion is directed to the sound discretion of the trial court, which assesses the good faith, credibility and weight of the movant's assertion in support of the motion. *State v. Xie,* 62 Ohio St.3d 521, 584 N.E.2d 715 (1992). The standard is designed to prevent a defendant from pleading guilty in order to test the potential punishment, and then withdrawing the plea if the punishment is not what he or she had hoped. *Id*., citing *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963). A trial court's ruling on a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *State v. Barnett*, 73 Ohio St.3d 244, 596 N.E.2d 1101 (1991).

{¶ 10} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. To establish ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that her or his errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *Id.*

{¶ 11} Rigsbee claims that the amount stolen, based on the forensic audit, "did not match the amounts of the checks deposited in [her] personal account." She also asserts that

she never saw the audit or the checks on which her employer relied, that "to her knowledge" her attorney did not see them either, and that she "was never asked" to reconcile the "two sets of checks." Rigsbee claims that, if she had known that her attorney did not reconcile the amounts, she would not have entered her plea, and that counsel's failure to do so was ineffective. Finally, she claims that she did not realize she was entering a plea, because she pled to a bill of information.

{¶ 12} Although Rigsbee claims that the amount the bill of information alleged to have been stolen was inaccurate, she does not state with any specificity how she arrived at this conclusion. She states that she saw at least some of the "checks claimed to be involved" in this case in August 2010, several months before her motion was filed, but her affidavit did not identify any specific problem(s) with the checks she saw.

{¶ 13} Furthermore, Rigsbee's assertion is refuted by the record. At the plea hearing, Rigsbee's attorney stated that he and Rigsbee had gone through the individual checks and that she "acknowlege[d] all the figures and check numbers in [the bill of information] are correct." The bill of information listed the month, check number, amount, bank, and date cleared for the checks at issue under each count of forgery; in all, over 200 forged transactions were documented in this manner under the forgery charges. Rigsbee's affidavit did not specifically allege or identify a single error in the amounts reflected by this listing, nor has she disputed her attorney's assertion at the hearing that they had reviewed the "figures and check numbers" for accuracy, if not the check themselves. Similarly, the bill of information listed the total amounts, per year, by bank, for the count of aggravated theft, which Rigsbee did not specifically refute.

{¶ 14}   Rigsbee repeatedly refers to two sets of checks; one set is the checks she wrote to herself on the company's account, but the other set to which she refers is unclear. She asserts that the amount of loss claimed by her employer did not match the checks deposited into her account.   But she also suggests that the checks written from the company account should have matched her personal expenditures (personal checks); this does not logically follow, since Rigsbee could have transferred money out of her account by means other than personal check. Our prior opinion indicates that she cashed some of the checks, which would have made it even harder to track the funds.   Rigsbee failed to demonstrate, other than through her self-serving statements, that the amount she actually stole differed from the amount the bill of information alleged was stolen.

{¶ 15}   Moreover, with respect to the aggravated theft, Rigsbee was found to have stolen over $1.9 million.   R.C. 2913.02(A)(2) and (B)(2) defined aggravated theft at that time as theft of more than $1 million.   Even if Rigsbee were correct in asserting that there were some discrepancies in the amounts reflected in her records and the company's records, there is no evidence to suggest that such discrepancies totaled more than $900,000. Likewise, Rigsbee was charged with six counts of forgery and one count of tampering with records, but by the company's estimate, she had completed 235 fraudulent transactions. Assuming Rigsbee were able to raise specific, substantive questions about some of the transactions –  an assumption that is not supported by her affidavit – there is no basis to conclude that she did not commit the charged forgeries and tampering with records.   The trial court did not abuse its discretion in concluding that Rigsbee's allegations lacked credibility or that the facts alleged in her motion did not require the plea to be withdrawn.

{¶ 16} Rigsbee asserts that her attorney did not review the alleged amounts of the thefts for accuracy, without offering any evidence in support of this assertion. The plea transcript, on the other hand, contains a statement from the attorney that he and Rigsbee had reviewed specific information, such as the date and amount, related to over 200 checks (although it does not indicate the attorney had copies of the checks in hand). Based on this evidence, and because of the assumption that trial counsel provided reasonable assistance, the trial court was not required to conduct a hearing on Rigsbee's unsupported claim that her attorney failed to obtain or review the relevant documents.

{¶ 17} As for Rigsbee's allegation that she did not know "that a Bill of Information was a plea," we note that more than four years passed between her plea and her motion to withdraw the plea. The trial court did not abuse its discretion in concluding that the delay in raising this argument weighed against its credibility. The trial court reasonably concluded that, if Rigsbee had truly misunderstood the fundamental nature of the actions she took when she entered her plea, for which she was sentenced to prison, she would have raised that issue more quickly. Further, the transcript of the plea hearing demonstrates that the trial court explained to Rigsbee a waiver of indictment, also referred to in the transcript as a waiver of grand jury, and its effect, before she signed it. It was clear from this discussion that, if Rigsbee signed the waiver, the bill of information would stand in the place of an indictment. This discussion refutes Rigsbee's suggestion that she did not understand the effect of the bill of information.

{¶ 18} Because the facts alleged in Rigsbee's motion and affidavit were insufficient to justify the withdrawal of her plea, the trial court did not err in failing to

conduct a hearing before it overruled the motion.

{¶ 19} As a final matter, we note that Rigsbee's brief contains one short paragraph in which she alleges that counsel was ineffective in failing to object to the aggregation of several checks into each count of forgery, which "artificially raised" the degree of the offenses. Appellate counsel states that he "found no authority" for charging the offenses in this manner. According to the State, the parties agreed to handle the 235 forged checks in this manner, with each count representing a different year, and Rigsbee would have faced a more serious penalty if the parties had not aggregated the checks into six counts.

{¶ 20} We express no opinion as to the merits of Rigsbee's argument related to the aggregation of the forgery charges, although such an aggregation was arguably permissible under R.C. 2913.61(C)(2) ("If an offender is being tried for the commission of a series of violations of * * * section 2913.02, * * * or section 2913.31 * * * of the Revised Code, * * * pursuant to a scheme or course of conduct, all of those offenses may be tried as a single offense."). Regardless, this argument was not properly raised in a motion to withdraw a plea. Rigsbee took a direct appeal from her conviction, in which she raised four assignments related to her sentence. Any argument about alleged error in how the offenses were charged or about ineffective assistance of trial counsel should have been raised at that time or in a motion for post-conviction relief. It was not properly raised in a motion to withdraw a plea, because the trial court lacked the authority to modify its judgment or sentence when this motion was filed. Moreover, Rigsbee does not allege that the error, if any, affected her willingness to enter a plea.

{¶ 21} The assignment of error is overruled.

**{¶ 22}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

Kevin S. Talebi
George A. Katchmer
Hon. Nick A. Selvaggio