[Cite as *State v. Fischer*, 2013-Ohio-4817.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                    :        C.A. CASE NO.    25618

v.                                                       :        T.C. NO.   11CR3492

MICHAEL E. FISCHER                      :        (Criminal appeal from
                                                            Common Pleas Court)

    Defendant-Appellant              :

                                                         :

                                        . . . . . . . . . .

**O P I N I O N**

Rendered on the ____1st____ day of ____November____, 2013.

                                        . . . . . . . . . .

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, P. O. Box 291771, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

                                        . . . . . . . . . .

DONOVAN, J.

{¶ 1}  This matter is before the Court on the Notice of Appeal of Michael Edward Fischer, filed February 8, 2013.  Fischer appeals from his February 4, 2013 judgment entry of conviction, following no contest pleas, on one count of aggravated robbery (deadly weapon), in

violation of R.C. 2911.01(A)(1), a felony of the first degree (count one), along with a three year firearm specification; one count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the first degree (count two), along with a firearm specification; one count of kidnapping (felony or flight), in violation of R.C. 2905.01(A)(2), a felony of the first degree (count three), along with a firearm specification; one count of felonious assault (peace officer)(deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the first degree (count four), along with two firearm specifications; and one count of vandalism, in violation of R.C. 2909.05(B)(2), a felony of the fifth degree (count five), along with a firearm specification.

{¶ 2}   The events giving rise to this matter occurred on October 8, 2011, at 1:45 p.m., when Fischer entered the Walgreens Pharmacy, at 5901 Springboro Pike, in Miami Township, heavily armed and in camouflage clothing. The relevant facts are reflected in the sentencing transcript as set forth below.  In sentencing Fischer, the court initially noted that count four was indicted with both a three-year and a seven-year firearm specification, and the court merged the specifications into a single seven-year specification.  The court then noted that counts one, two, and three, which related to events that occurred inside the pharmacy, each carried a three-year firearm specification, and the court merged those specifications into a single three-year firearm specification.  The court then continued with sentencing as follows:

> The Court would make the finding that those firearm specifications do not merge into the seven-year firearm specification for the felonious assault of a police officer, as it was an entirely different transaction and different animus. The Court would find that the animus for and the transaction for the activity inside the pharmacy was to rob the pharmacy and, whereas, the transaction and the

animus for the activity on the outside of the Walgreens was for the purpose of trying to escape that, and the merger is not appropriate for those firearm specifications. So, we're going to be starting off with a[n] understanding there's going to be 10 years of mandatory time for firearm specifications in the case.

Then with regard to the other underlying counts, understanding Mr. Lachman's argument for merger on those counts. And understanding the State's position on that, that the Court believes that because there is, in fact, separate victims for each and every one of those counts, that merger is not appropriate. That there is, in fact, a separate animus with regard to those counts and merger of the underlying counts themselves is not appropriate.

{¶ 3} After making the findings necessary to impose consecutive sentences, the court continued as follows:

In making those findings, the actual underpinning for these findings is reflected in the presentence investigation report. And because I believe that the appellate court in the interim will be interested in what the actual facts are to support those findings, I'm going to state that using the information contained in the presentence investigation report. (sic)

In that presentence investigation report, it is revealed that in addition to the AK-47, Mr. Fischer had a loaded 40-caliber pistol in a holster on his hip, an additional clip for this pistol with 14 rounds. Four additional AK-47 magazines carrying 30 rounds each in his pant pockets, three knives in his pockets with a fourth strung around his neck, and two boxes of 20 rounds each of 223-caliber

ammo used in the AK-47.

The PSI also reflects that Mr. Fischer fired six shots with his AK-47, striking Officer Ooten's cruiser three times. He fired an additional round inside of the pharmacy. During the search of Mr. Fischer's vehicle, officers located a 12-gauge shotgun with a round in the chamber and four more in a magazine. The officers also located a hatchet, two loose rounds of 223 ammunition, and 15 rounds of 12-gauge shotgun shells.

When Mr. Fischer entered into the pharmacy with the AK-47 plainly visible, he went to the back of the pharmacy where he encountered the pharmacy technician. He ordered her to give him Oxycontin and morphine pills. He then pointed his rifle at her and fired one round, striking a metal shelf in the pharmacy. The pharmacy tech and the pharmacist then hid behind a counter while Mr. Fischer continued to demand that they open the safe and give them [sic] the pills. He eventually was able to get the pharmacist against her will to open the safe and place three bottles of morphine and three bottles of Oxycontin into a bag.

In the course of sentencing Fischer, the court noted that count two pertained to the pharmacy technician at whom Fischer fired his rifle, and count three pertained to the pharmacist.

{¶ 4} Fischer asserts two assignments of error herein. His first assigned error is as follows:

THE TRIAL COURT ERRED IN FAILING TO MERGE COUNTS I, II AND III OF APPELLANT'S CONVICTION AS THOSE COUNTS CONSTITUTE ALLIED OFFENSE OF SIMILAR IMPORT; AND THE TRIAL

COURT ERRED IN FAILING TO MERGE COUNTS IV AND V OF APPELLANT'S CONVICTION AS THOSE COUNTS CONSTITUTE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶ 5}   R.C. 2941.25, Ohio's multiple count statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 6}   R.C. 2911.01 proscribes aggravated robbery and provides:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶ 7}   R.C. 2903.11 proscribes felonious assault and provides: "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to

another * * * by means of a deadly weapon * * * ."

{¶ 8}    R.C. 2905.01(A)(2) proscribes kidnapping and provides:

(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

* * *

(2) To facilitate the commission of any felony or flight thereafter.

{¶ 9}    Fischer directs our attention in part to *State v. Anderson*, 2012-Ohio-3347, 974 N.E.2d 1236 (1st. Dist.), and the cases cited therein.  In *Anderson*, the First District determined that Anderson's convictions for aggravated robbery and kidnapping, committed in the course of a bank robbery,  were subject to merger under the multiple counts statute.   The court summarized the allied-offenses analysis as follows:

Under R.C. 2941.25, Ohio's multiple-count statute, a trial court, in a single proceeding, may convict a defendant of two or more offenses having as their genesis the same criminal conduct or transaction, if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus. *See State v. Bickerstaff*, 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892 (1984); *see also State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 51.  Unless committed separately or with a separate animus, allied offenses must be merged for purposes of sentencing following the State's election of which offense should survive. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of

the syllabus.

The Ohio Supreme Court has "consistently recognized that the purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple punishments heaped on a defendant for closely related offenses arising from the same occurrence. * * * when 'in substance and effect but one offense has been committed,' the defendant may be convicted of only one offense." *Johnson* at ¶ 43, citing *Maumee v. Geiger*, 45 Ohio St.2d 238, 242, 344 N.E.2d 133 (1976), and quoting *State v. Botta*, 27 Ohio St.2d 196, 203, 271 N.E.2d 776 (1971); *see also* 1973 Legislative Service Commission comments to 1972 Am.Sub.H.B. No. 511 (enacting, inter alia, R.C. 2941.25 and R.C. 2905.01, the kidnapping statute).

In deciding whether to afford a defendant the protections of the multiple-count statute, "the intent of the General Assembly is controlling." *Johnson* at ¶ 46. "The General Assembly has the power to define criminal offenses in any manner it chooses, so long as it does not violate pertinent constitutional provisions." *State v. Logan*, 60 Ohio St.2d 126, 134-135, 397 N.E.2d 1345 (1979); * * *.

While R.C. 2941.25 has never been amended, commentators, and the supreme court itself, have acknowledged that the test to determine whether two allied offenses are subject to merger has expanded and contracted in "accordion-like" fashion over the 38 years since the enactment of the multiple-counts statute. Parson, *Punish Once, Punish Twice*: *Ohio's Inconsistent Interpretation of Its Multiple Counts Statute*, 36 Cap.U.L.Rev. 809, 823 (2008);

*see also Johnson* at ¶ 10-40. In late 2010, the Ohio Supreme Court abandoned its prior abstract-elements-only test for determining when two allied offenses are subject to merger. *See Johnson*, syllabus.

Under *Johnson*, courts now determine the General Assembly's intent to provide or restrict multiple punishments for a single course of conduct "by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." *Id.* * * *

* * * Therefore, we look to the evidence adduced below, and if that evidence reveals that the state relied upon the "same conduct" to prove the two offenses, and that the offenses were committed neither separately nor with a separate animus as to each, then the defendant is afforded the protections of R.C. 2941.25, and the trial court errs by imposing separate sentences for the offenses. R.C. 2941.25(A); *see also* R.C. 2941.25(B); *Johnson* at ¶ 56. *Anderson*, ¶ 15-20.

{¶ 10} In *Anderson*, Anderson robbed a bank with two co-defendants. The First District noted that the facts as set forth in the indictment, bill of particulars, and plea-hearing materials "demonstrate that the aggravated-robbery and kidnapping offenses were based upon Anderson's actions in jumping over the counter and taking the bank's money, while Cooper brandished a handgun to move Barnaclo and the others to a common area in the bank." *Id*., ¶ 22. The First District found that "Co-defendant Cooper's conduct in moving and restraining Barnaclo with a handgun so that all the defendants could take the bank's money satisfies the elements of both aggravated robbery and the kidnapping offenses." *Id.* In other words, because "the state relied

upon the same conduct to demonstrate both offenses, the aggravated robbery and kidnapping were allied offenses not committed separately. *See Johnson* at ¶ 49 and 51*; see also Bickerstaff,* 10 Ohio St.3d at 65-66, 461 N.E.2d 892; *Cooper* at ¶ 15." *Id.*

{¶ 11} After determining that the offenses were allied offenses of similar import, the First District next determined that "our analysis moves to a further review of Anderson's conduct to consider, pursuant to R.C. 2941.25(B), whether the offenses were committed separately or with a single animus." *Id*., at ¶ 23. The First District determined as follows:

These offenses were not committed separately. The record does not reflect a temporal or spatial separateness in the offenses. * * * The robbery lasted about 90 seconds, and Cooper held the bank employees and patrons at gunpoint for approximately 45 seconds. The perpetrators fled immediately after obtaining the bank's property. The kidnapping and the bank robbery clearly involved one sustained, continuous act under R.C. 2941.25(B).

As the Ohio Supreme Court has noted, the commission of aggravated robbery necessarily entails the restraint of the victim. *See State v. Jenkins*, 15 Ohio St.3d 164, 198, 473 N.E.2d 264 (1984), fn. 29 ("kidnapping is implicit within every aggravated robbery"), *see also Logan*, 60 Ohio St.2d at 130, 397 N.E.2d 1345. In addition, the court has provided guidelines for determining whether the restraint or movement of the victim is "penologically significant" apart from the aggravated robbery. *Logan* at 135, 397 N.E.2d 1345.

Where "the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate, a significance independent of the

robbery, there exists a separate animus, a separate 'immediate motive,' to support the kidnapping conviction." *Chaffer*, 1st Dist. No. C-090602, 2010-Ohio-4471, 2010 WL 3722779, at ¶ 11, quoting *Logan* at syllabus. And "where the asportation or restraint exposes the victims to a substantial, increase in the risk of harm separate and apart from the underlying crime of robbery, a separate animus [also] exists for kidnapping." *Id*.

* * *

In *Logan*, the supreme court identified the critical consideration: Was the restraint or movement of the victim merely incidental to a separate underlying crime, or did it have a significance independent of the other offense? *See Logan*, 60 Ohio St.2d at 135, 397 N.E.2d 1345. If the kidnapping was merely incidental, then the legislative intent is to require merger. This inquiry remains the central question under the *Johnson* conduct-focused analysis. * * *. *Id.,* at ¶ 24-26, 29.

{¶ 12}  When we consider the offenses herein committed in light of Fischer's conduct, it is clear that in substance and effect, the multiple offenses were committed with a separate animus as to each of them. "We have recognized that separate convictions and sentences are permitted when a defendant's conduct results in multiple victims. See, e.g., *State v. Skaggs*, Clark App. No. 10-CA-26, 2010-Ohio-5390, ¶ 7, citing *State v. Jones* (1985), 18 Ohio St.3d 116, 117, 480 N.E.2d 408, * * * ." *State v*. Young, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, ¶ 39.  *Anderson* involved one sustained, continuous act where "the bank robbery was the immediate motive for the kidnapping. Kidnapping the bank employee was merely incidental to the robbery." *Id*., ¶ 31. Here, in contrast, after demanding the drugs from the pharmacy

technician, Fischer fired a shot at her, and she is specifically identified in count two of the indictment as the victim therein. In other words, Fischer's conduct in firing at her demonstrated a separate immediate purpose to cause or attempt to cause physical harm to the technician by means of a deadly weapon in order to obtain prescription drugs. A separate victim, the pharmacist was subsequently forced from her place of hiding to retrieve the drugs for Fischer, after Fischer opened fire upon the technician. Fischer subjected the pharmacist to a substantial increase in the risk of harm separate and apart from that involved in the aggravated robbery (and the felonious assault), such that a separate animus also exists for the kidnapping. Since the offenses in the first three counts in the indictment were each committed with a separate animus involving two distinct victims, we conclude that the trial court did not err in failing to merge counts one through three at sentencing.

{¶ 13} Regarding counts four and five, R.C. 2909.05(B)(2) proscribes vandalism as follows:

(2) No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity. A governmental entity includes, but is not limited to, the state or a political subdivision of the state, a school district, the board of trustees of a public library or public university, or any other body corporate and politic responsible for governmental activities only in geographical areas smaller than that of the state.

{¶ 14} The PSI provides as follows regarding the offenses in counts four and five:

Officer Ooten was the first to arrive on scene. * * * As he was stopping his cruiser, the suspect (Michael Edward Fischer) was walking out of the front door. *

* * Mr. Fischer observed Officer Ooten and immediately raised his rifle and began to open fire on Officer Ooten, who still had not put his cruiser in park. The first few shots went through the windshield of the cruiser as Officer Ooten then crawled towards the back of his car while Mr. Fischer continued to shoot at him. Officer Ooten was able to make it towards the back of his cruiser during which time Mr. Fischer had stopped shooting. Officer Ooten peered over his trunk in an attempt to locate Mr. Fischer. He noted that Mr. Fischer had moved several feet and was looking into the driver's area of the vehicle with his rifle still up. Mr. Fischer then observed Officer Ooten at the rear of his cruiser and began to point his rifle into his direction. Officer Ooten then fired his weapon several times at Mr. Fischer, striking him multiple times. * * *

{¶ 15} We agree with the State's assertion that the "action of pointing the gun (with the intent to fire) at Officer Ooten after Fischer sprayed bullets into the cruiser was spatially separate from the initial act of gunfire that occurred when Fischer walked out of Walgreens." After Fischer opened fire on him, Ooten exited his cruiser and crawled to the rear of the vehicle as Fischer ceased firing his weapon. Fischer looked for Ooten inside the vehicle, with his rifle pointed upwards, and not until he observed him behind the cruiser did he point his rifle at him again to initiate a felonious assault anew, which was separate and distinct from the vandalism of the cruiser. Since the offenses were committed separately, they were not subject to merger. *See State v. Rainier*, 2d Dist. Montgomery No. 25091, 2013-Ohio-963 (finding two separate and distinct acts of felonious assault not subject to merger where Rainier stabbed the victim in the chest and arm while they stood at a bar, and then stabbed the victim in the back as she turned and

attempted to flee). Since a felonious assault and the vandalism offense were committed separately, the trial court did not err in failing to merge the offenses at sentencing. There being no merit to Fischer's first assigned error, it is overruled.

{¶ 16} Fischer's second assigned error is as follows:

THE TRIAL COURT ERRED IN IMPOSING COURT COSTS AND RESTITUTION AGAINST APPELLANT.

{¶ 17} After imposing court costs at sentencing, the court advised Fischer as follows:

Now, there is the issue of restitution. And understanding that Mr. Fischer has filed an Affidavit of Indigency indicating that he does not have the ability to pay restitution, but while his - - and I'm sensitive to the fact that given the length of the sentence that's imposed on Mr. Fischer that he's not going to in all likelihood have the opportunity for any form of private sector employment. However, he is going to be receiving a stipend through the prison sentence. And as a result of that, the Court is going to impose the restitution amount that was verified by Miami Township for the damage to the cruiser in the amount of $6,025.18.

{¶ 18} As this Court has noted:

* * * R.C. 2929.19(B)(6) provides that a trial court must consider an offender's present and future ability to pay before imposing a financial sanction under R.C. 2929.18. This court has previously found that "[t]he trial court does not need to hold a hearing on the issue of financial sanctions, and there are no express factors that the court must take into consideration or make on the record."

(Citation omitted.) *State v. Culver,* 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, at ¶ 57. However, we have further stated that the record should contain "'evidence that the trial court considered the offender's present and future ability to pay before imposing the sanction of restitution.'" Id., quoting *State v. Robinson*, Hancock App. No. 5-04-12, 2004-Ohio-5346, 2004 WL 2260101, at ¶ 17. *State v. Rigsbee*, 174 Ohio App. 3d 12, 2007-Ohio-6267, 880 N.E.2d 524, ¶ 29 (2d Dist.).

{¶ 19} R.C. 5145.16(A) provides:

The department of rehabilitation and correction shall establish work programs in some form of labor for as many prisoners as possible who are in the custody of the department, except those prisoners who are not able to perform labor because of illness or other health problems, security requirements, routine processing, disciplinary action, or other reasonable circumstances or because they are engaged in educational, vocational, or other training. The labor may be in the department's manufacturing and service industries and agriculture, in private industry or agriculture that is located within or outside the department's institutions, in public works, in institutional jobs necessary for the proper maintenance and operation of the institutions under the control of the department, or in any other appropriate form of labor. The department, pursuant to the program, shall attempt to engage in work programs as many prisoners as possible who are in its custody and who are eligible for the programs. The department is not required to engage every eligible prisoner in a work program when sufficient

money, facilities, or jobs are not available for the program; however, the department shall continuously seek sources of labor for as many eligible prisoners as possible.

**{¶ 20}**  R.C. 5145.16(C)(8)(b)(i) provides:

The department, in establishing and administering the work programs required to be established by division (A) of this section, may do any of the following:

* * *

(8)Allocate the earnings of the prisoners as follows:

* * *

(b) Up to twenty-five per cent of the earnings to be distributed to one or both of the following:

(i) To the victims of the prisoner's offenses for restitution if the prisoner voluntarily requests or is under court order to make restitution payments

* * *

**{¶ 21}**  The record reflects that the trial court expressly considered Fischer's present and future ability to pay restitution, and we agree with the State that, since "the legislature has expressly allocated prison wages as a source for financial sanctions, it is a legitimate restitution source for this trial court to have considered" over the course of a fifty-year term.  Fischer should be able to pay some portion of the $6,025.18 in restitution as well as costs.  There being no merit to Fischer's second assigned error, it is overruled.  The judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

April F. Campbell
J. David Turner
Hon. Mary L. Wiseman