OPINION
{¶ 1} Dayron McComb appeals the trial court's refusal of his post-sentence request to withdraw two no-contest pleas. He claims that he was led to believe that he would receive community control sanctions for his crimes rather than two years in prison, *Page 2 
which was his actual sentence. The trial court did not err.
 {¶ 2} Mr. McComb was separately charged with offenses twice over the span of three months.[1] In January 2007 he was charged with carrying a concealed weapon (loaded and ready at hand) and resisting arrest. Two months later, he was charged with receiving stolen property (motor vehicle), criminal damaging, and failure to comply with an order or signal of a police officer (substantial risk of serious physical harm). In exchange for dropping the resisting arrest and criminal damaging charges, he pled no contest to each remaining charge. He also agreed to so plead because his attorney thought it likely, because he had no criminal history, that he would receive only community control sanctions. His attorney was wrong; the trial judge sentenced Mr. McComb to a total of two years in prison.
 {¶ 3} Mr. McComb learned that he would receive this prison sentence before he was actually sentenced. At the sentencing hearing, his attorney made an oral motion to withdraw his client's pleas of no contest. He argued that Mr. McComb was led to believe that he would not be sentenced to prison. The trial judge denied the motion, saying that Mr. McComb was never promised community control, and further that when he entered his plea he was told that his sentence would be in the sentencing judge's discretion. Mr. McComb memorialized his oral motion in writing three days later.
 {¶ 4} He assigns a single error for our review:
 {¶ 5} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO WITHDRAW HIS PLEAS."
 {¶ 6} The Rules of Criminal Procedure permit a defendant to withdraw a guilty plea. *Page 3 
"A motion to withdraw a plea of guilty or no-contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim. R. 32.1.
The rule distinguishes motions to withdraw based on timing-those filed before sentence and those filed after sentence. This is so principally for policy reasons. "This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe." Kadwell v. U.S. (C.A. 9, 1963), 315 F.2d 667, 670; see, also,State v. Long (May 13, 1993), Montgomery App. No. 13285, 1993 WL 155662, at *17.
 {¶ 7} While technically occurring before sentence, a motion made after learning of the imminent sentence is considered to be filed after sentencing. See Long at *17. Such a situation implicates the policy concerns cited above as much as a motion actually filed after sentencing does.
 {¶ 8} Withdrawal of a guilty plea after sentencing is permitted only in "extraordinary cases." State v. Smith (1977), 49 Ohio St.2d 261, 264,361 N.E.2d 1324. The standard used to evaluate post-sentence motions for withdrawal asks whether a manifest injustice will afflict the defendant if the plea is not withdrawn. See Crim. R. 32.1. "Manifest injustice" eludes a single definition. The concept is flexible, and whether it exists depends on the *Page 4 
facts and circumstances in each case. See Smith.
 {¶ 9} A change of heart after becoming aware of an imminent, unexpectedly harsh sentence does not entitle a defendant to withdraw his guilty plea. Long at *17. A manifest injustice generally does not result when a defendant holds (as he discovers) a mistaken belief that his sentence would be significantly lighter than the one actually imposed. See State v. Lambros (1988), 44 Ohio App.3d 102, 541 N.E.2d 632. The reason for the belief is key. If defense counsel caused the belief, what counsel exactly said must be examined. A manifest injustice does not necessarily arise merely because counsel is wrong about the sentence that is actually imposed. Only if counsel promised the defendant that a guilty plea will result in a lower sentence than is actually imposed would a manifest injustice potentially result. See State v. Blatnik
(1984), 17 Ohio App.3d 725, 478 N.E.2d 1016. If counsel simply made a prediction, there would be no manifest injustice. Id. In other words, counsel's erroneous advice and incorrect speculation regarding the sentence that is likely to be imposed potentially results in a manifest injustice only if counsel said that a guilty plea will result in a particular sentence, but not if counsel said that it probably will result.
 {¶ 10} Whether to grant a defendant's post-sentence motion to withdrawal a guilty plea is in the trial court's discretion. State v.Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715. Not surprisingly then, an appellate court reviews such exercises of the trial court's discretion only for abuse. See State v. McNeil (2001), 146 Ohio App.3d 173, 176,765 N.E.2d 884.
 {¶ 11} How Mr. McComb came to his mistaken belief is not entirely clear. While making the oral motion to withdraw, counsel told the court: "My client's understanding was at the time he entered the plea that the most he was looking at was the Monday program. *Page 5 
That's based on the fact there's-his record, being his first offense, lack of any prison sentence in the past, and under the circumstances he was led to believe that that was-or he came to believe that that was the worse case scenario here with taking this plea. . . ." (Tr. 9). His written motion, filed a few days later, is no clearer: "Defendant asserts that at the time he entered the pleas of guilty, he was under the belief, mistakenly, that his . . . [criminal history] would leave him exposed to a maximum incarceration of six months in the Monday Program as part of community control." Further, "the pleas were entered under a misunderstanding of the penalties facing Defendant and the likely hood [sic] of those penalties being imposed."
 {¶ 12} The trial judge too questioned how he came to his belief. During a sidebar conference before sentencing Mr. McComb, and after counsel explained his position, the trial judge said, "Well, he's not saying that Mr. Weaver [plea counsel] promised him he'd get Monday. Is that what he's saying?" (Tr. 4). Sentencing counsel replied, "That was his contention is that that was his understanding from Mr. Weaver that he said the worst he's going to get is Monday." Id. Counsel then told the judge that he "talked to Mr. Weaver and he said no, I didn't tell him [Mr. McComb] that. And I [Mr. Weaver] told him it's up to the judge, but it being your first offense and all, most likely that's what he'll get." Id. "So," concluded sentencing counsel, "there's enough there that I think my client got that impression, but I don't think he was actually told that." Id.
 {¶ 13} The trial court did not hold a formal hearing after counsel made the oral motion to withdraw. Still, the trial judge did consider the motion and explained his decision this way:
 {¶ 14} "I would indicate here for the record, that we had a, at the time of the plea, I *Page 6 
believe typically discuss any agreements that have been agreed to and our understandings in this case. I don't believe there was any promise made that Mr. McComb would receive community control sanctions with a condition of the Monday program.
 {¶ 15} "So, I may have a different understanding than Mr. McComb of what happened at the plea, but I think Mr. McComb was advised here, on the record in open court, that he did face prison sentence in the matter and that it was up to the Court to determine whether or not community control sanctions would be granted in this case." (Tr. 10).
 {¶ 16} Corroborating the trial court, Mr. McComb, in his written motion to withdraw, admits that he knew his sentence could be harsher. He wrote, "Defendant was informed at the plea hearing of the standard admonition that no promises were being made regarding sentencing."
 {¶ 17} The trial court did not abuse its discretion when it denied Mr. McComb's motion to withdraw his no contest pleas. There is no evidence that his attorney promised him a lighter sentence if he entered pleas of no contest, nor does Mr. McComb assert that he did. The attorney simply speculated that based on Mr. Comb's criminal record, prison time was unlikely.
 {¶ 18} While wrong, the attorney was probably reasonable to discount the likelihood of prison time. In fact, it was recommended that Mr. McComb receive community control sanctions with a requirement of the Monday program. "Problem is," said the judge candidly, "is with me." He continued, "I think there should be a sentence in this case. I know it's a first offense. But this is one of those things that I think is serious. You know, he went out and he stole a car or was involved in the theft of a car, and then went on a wild *Page 7 
chase fleeing, which I think is an extremely dangerous condition." (Tr. 5).
 {¶ 19} Mr. McComb also argues that the trial court should have held a hearing on his motion to withdraw. A trial court is not necessarily required to hold a hearing before deciding a post-sentence withdrawal motion. A hearing is required only if the facts alleged by the defendant, if accepted as true, would require the plea be withdrawn. SeeState v. Hamed (1989), 63 Ohio App.3d 5, 577 N.E.2d 1111. Here there were no such facts alleged. He did not claim that he was promised-by anyone-a lighter sentence than he actually received. Therefore, the trial court acted within its discretion when it chose not to hold a formal hearing.
 {¶ 20} Mr. McComb's lone assignment of error is overruled, and the judgment of the trial court is affirmed.
WOLFF, J., and GRADY, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Johnna M. Shia
James C. Staton
Hon. Timothy N. O'Connell
[1] The two cases are consolidated in this appeal. *Page 1