[Cite as *State v. Chestnut*, 2025-Ohio-4787.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JARRED CHESTNUT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0006

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 25 CR 355

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor, and *Atty. Danielle Menning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Martin E. Yavorcik,* for Defendant-Appellant.

Dated: October 17, 2025

**DICKEY, J.**

**{¶1}** Appellant, Jarred Chestnut, appeals the March 17, 2025 decision of the Columbiana Court of Common Pleas summarily overruling his oral motion to withdraw his plea. Appellant made the motion through counsel at the sentencing hearing after his indefinite sentence of a minimum of two years and maximum of three years was imposed by the trial court. There was no direct appeal taken from this case. In his sole assignment of error, Appellant argues the trial court violated his right to due process when it overruled his oral motion to withdraw his plea without conducting any inquiry or scheduling a hearing. Finding no reversible error, the decision of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On June 21, 2024, criminal complaints were filed in the Columbiana Municipal Court charging Appellant with one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree; one count of weapon under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree; and one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree. The cases were transferred to the Columbiana Court of Common Pleas and on August 7, 2024, Appellant was indicted for one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree, and one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree.

**{¶3}** R.C. 2911.11(A)(1), captioned "Aggravated burglary," reads in its entirety:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]

**{¶4}** On January 13, 2025, Appellant entered a guilty plea to an amended charge of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, in exchange for the dismissal of the aggravated menacing charge. Aggravated menacing remained the underlying criminal offense in the burglary charge.

**{¶5}** R.C. 2911.12(A)(1), captioned "Burglary; trespass in a habitation when a person is likely to be present," reads in its entirety:

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]

Therefore, the only distinction between the original charge and the amended charge was the element of the infliction of physical pain, or threat or attempt to inflict physical harm.

**{¶6}** At the plea hearing, the state expressed its intention to recommend a two-year sentence at the sentencing hearing, which it conceded was not a mandatory sentence. Defense counsel expressed Appellant's intention to request the imposition of community control. The state then moved to amend count one and dismiss count two of the indictment. Both sides moved for the preparation of a pre-sentence investigation report, in order to update an existing 2012 report. Neither report is in the record.

**{¶7}** During Appellant's plea colloquy, he acknowledged his plea was voluntary and not the product of any threat or promise regarding his sentence. Appellant further acknowledged his counsel had reviewed and explained the plea agreement, the judicial advice, and the response to the court, and Appellant fully understood the contents of those documents. The trial court reviewed the elements of the amended charge and the constitutional rights waived by Appellant as a consequence of his plea.

**{¶8}** Relevant to this appeal, the trial court notified Appellant of the possible sentences for a second-degree felony, that is, a minimum sentence ranging from two

years to eight years, and a maximum sentence of twelve years. The matter was set for a sentencing hearing.

**{¶9}** At the sentencing hearing on March 17, 2025, the state provided the following summary of Appellant's conduct, which occurred in June of 2024 and served as the basis for the criminal charges:

> [Appellant] went to the victim's residence, and initially covered up the [security] camera. He was going to go through the front, didn't go in through the front, went around through the back door, and then there were actually still shots of [Appellant] inside the residence.
>
> The victim did give a statement where he said he was confronted by [Appellant], who had a gun in his waistband. [Appellant] did threaten him multiple times, what [sic] was the basis for the aggravated burglary.

(3/17/25 Sentencing Hrg., p. 3-4.)

**{¶10}** Consistent with its statement at the plea hearing, the state recommended a two-year sentence. In support of its recommended sentence, the state cited Appellant's criminal history, which included "a domestic violence that was amended down, as well as a breaking and entering from 2011." (*Id.* at p. 4-5.) The state also cited Appellant's statement to the probation officer that Appellant never entered the residence, despite the still photographs that established his entry into the victim's home.

**{¶11}** Defense counsel, on the other hand, focused on Appellant's conduct after his indictment, arguing Appellant "ha[d] done everything that we would ask someone to do since the time of [the] offense." (*Id.* at p. 6.) Appellant was attending voluntary counseling sessions and he was employed. Appellant's supervisor described him in correspondence to the trial court as "dependable, hard-working, and always ready to lend a helping hand where needed." (*Id.*)

**{¶12}** Defense counsel characterized the confrontation between Appellant and the victim as "a discussion." (*Id.*) Finally, defense counsel argued Appellant suffered from unidentified medical issues "that he [was] currently taking care of [sic]." (*Id.* at p. 7.)

**{¶13}** During allocation, Appellant explained he confronted the victim based on limited information that the victim "was messing with [Appellant's] brother." (*Id.* at p. 8.) Appellant asserted he went to the victim's residence to ascertain all of the facts. Appellant conceded his actions were "simply uncalled for and unjustified" because he had incomplete information. (*Id.* at p. 9.) Evidently, the victim had a child from a previous relationship with a woman, "Trisha," who was romantically involved with Appellant's brother at the time of the confrontation.

**{¶14}** According to Appellant's recitation of the events leading to his plea, he had a discussion with the victim regarding the victim's custody agreement with Trisha. Appellant determined the victim was acting within the confines of the custody agreement, and it was Trisha who was violating the agreement. Appellant then ended the discussion and warranted he would tell his brother that the dispute was solely for Trisha and the victim to resolve.

**{¶15}** Appellant "promise[d]" the trial court that he did not mean to "physically or mentally try to cause [the victim] like, any kind of harm or what he felt." (*Id.* at p. 21.) Appellant further stated "it eats [him] up to not be able to have a chance to apologize to [the victim]," because Appellant was "not in the right state of mind when [Appellant] went [to the victim's residence.]" (*Id.*)

**{¶16}** The trial court accused Appellant of "sugarcoating" the facts during allocation and asserted Appellant's actual motivation for confronting the victim was "to intimidate [the] guy." (*Id.* at p. 9, 10.) The trial court accused Appellant of lying about the entire encounter, typified by his statement to Eastern Ohio Correctional Center ("EOCC"), which the trial court read into the record:

> "I drove over to a guy's house who I was told was causing problems with my brother. I went over and knocked on the door to find out what was going on. He answered. I asked who he has – who he was because I never met him before. We talked about what's going on between the two of them and why. He offered to show me his custody papers for his kids. We looked over them standing in the kitchen. I left and talked to my brother."

(*Id.* at p. 19.) The trial court observed, "[w]ell, boy, Mr. Chestnut, that sounds like a nice little encounter." (*Id.*)

**{¶17}** The trial court juxtaposed Appellant's version of the crime with the victim's account:

> "That's [sic] the Chestnut brothers, later identified as [Appellant], you, barged into his residence with a firearm on his waist, they threw him to the floor and into the wall, and told him to leave Trisha alone."

(*Id.* at p. 20.) The trial court observed, "[s]ounds like a different version from knocking to being directed to the kitchen." (*Id.* at p. 20-21.)

**{¶18}** The trial court speculated the victim was "awfully nice" during the confrontation because Appellant was armed and the victim was scared. (*Id.* at p. 17.) When pressed by the trial court, Appellant conceded he covered the security camera at the victim's residence. (*Id.* at p. 18.)

**{¶19}** According to Appellant, he had amended his life after the burglary, and he was, as of the date of the sentencing hearing, a dedicated husband and father. Appellant explained the crime occurred during a brief separation in his marriage, when he "lost track in what was very important to [him], and [he] got involved in someone else's problems." (*Id.* at p. 12.)

**{¶20}** Appellant informed the trial court of upcoming family events in 2025, which included his son's first year of baseball and his daughter's first year of junior high school. Appellant also described his work with Lisbon Security at the county fair. Appellant stated, "it was really joyful for [him] to be on, you know, the right side of the law." (*Id.* at p. 13.) In addition to the family's busy upcoming schedule, Appellant told the trial court that the family could lose their home to foreclosure without his income.

**{¶21}** Unmoved, the trial court responded, "[a]nd somehow, with all this, you thought taking a gun and going into someone's house to threaten them was a good idea." (*Id.* at p. 14.) When Appellant repeated the crime occurred when he was separated from his wife, the trial court inquired, "[w]hat if someone came to your house with a gun about your kids and when you should get to see them?" (*Id.*) The trial court opined the victim had "every right to shoot you guys -- every right." (*Id.* at p. 16.)

Case No. 25 CO 0006

**{¶22}** Appellant warranted that he did not own a gun, and defense counsel added, "it did get amended to the F2 not the F1 because of this." (*Id.* at p. 17.) However, the trial court responded, "it doesn't change the facts of what happened on that day, whether you pled to something lesser or not." (*Id.*) The trial court added, "you want me to put you on probation, yet, you're giving me some cockamamie story that you think I'm dumb enough to believe." (*Id.* at p. 20.)

**{¶23}** Finally, Appellant promised it would be the last time the trial court would see Appellant's face in the courtroom if the trial court would impose community control. Appellant stated, "I want the opportunity to be there for my kids and prove to them that dad is a better person and that people can change." (*Id.* at p. 25.) Appellant referred to a poster made by his son, on which his son expressed he wants to be "just like his dad when he grows up [sic]." (*Id.*)

**{¶24}** Prior to the imposition of the sentence, the trial court observed:

So the Court has to consider seriousness and recidivism factors. The seriousness factors are high. You went into somebody's home with a gun. You had no business doing it.

Listen, I'm sure your son wanted to be just like you when this happened too. It's not like you can pause – push a pause button and act like a fool, and then not have any consequence for it, and then come in here and tell me that it's – you all of a sudden want to be the most exceptional parent. You were a parent then when this happened.

You deserved – your kids deserved better from you then as they still do now. It shouldn't take something like this to get you to realize that.

And especially, Mr. Chestnut, when this isn't your first time. You have a juvenile record. You have an adult felony record. You have misdemeanors. And now you have this case.

. . .

Case No. 25 CO 0006

Seriousness factors are high. Recidivism factors are on the higher side, too, because of your criminal record starting back as a juvenile.

Let's see. So you were placed on five years of probation, 2012. You violated and you were ordered to a term at EOCC. Then after that, you picked up a domestic – well, actually not – that was right before this – domestic violence in Mahoning County. You were on probation in Municipal Court in the past – violated.

The seriousness and recidivism factors are high. The Court, at this point, does not find that you are amenable to community control. I'm going to follow the state's recommendation, impose a minimum two-year term of incarceration to a maximum three-year term[.]

(*Id.* at p. 26-28.)

**{¶25}** Appellant interjected, "Your Honor, please. I didn't have a gun." The trial court replied, "[s]top. . . You're done. You have already talked." (*Id.* at p. 28-29.)

**{¶26}** At the conclusion of the hearing, the trial court asked if there was anything further from the defense. Defense counsel responded, "Your Honor, my client just said he wants to revoke his plea." (*Id.* at p. 33.) The trial court responded, "No – that's not how this works. It's denied." (*Id.*) Appellant replied, "I want to take it to trial. I want – I want to bring him [an unidentified male] as a witness." (*Id.*) The trial court concluded the sentencing hearing.

**{¶27}** This timely appeal followed.

**{¶28}** Two points of clarification are necessary with respect to the facts and the argument of appellate counsel. First, although it is not clear from the record, it appears Appellant's brother accompanied him to the victim's residence. Second, Appellant's counsel argues in his brief that the victim, not Appellant, was armed. This error could have been gleaned by Appellant's counsel from the trial court's misuse of a pronoun at the sentencing hearing:

The victim stated: "That's [sic] the Chestnut brothers, later identified as [Appellant], you, barged into his residence with a firearm on *his* waist, they threw him to the floor and into the wall, and told him to leave Trisha alone.

(*Id.* at p. 20.)

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY SUMMARILY DENYING HIS POST-SENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA WITHOUT HOLDING A HEARING OR CONDUCTING ANY INQUIRY, IN VIOLATION OF CRIM. R. 32.1.**

{¶29} Appellant argues the trial court had a duty to supplement the facts underlying his oral motion at the sentencing hearing, or in the alternative, to set the oral motion for a separate hearing. Appellee argues an evidentiary hearing is only required where facts alleged by a defendant, accepted as true, would require the trial court to grant the motion.

{¶30} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "The motion is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). In reviewing whether a court abused its discretion in denying a plea withdrawal motion, the appellate court considers whether the trial court's ruling was unreasonable, arbitrary, or unconscionable. *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).

{¶31} "[A] postsentence withdrawal motion is allowable only in extraordinary cases." *Smith*, at 264. The burden of establishing manifest injustice is on the defendant. *Id.* The defendant must show withdrawal is "necessary" to correct manifest injustice. *State v. Stumpf*, 32 Ohio St.3d 95, 104 (1987).

Case No. 25 CO 0006

{¶32} We have referred to manifest injustice as "an extraordinary and fundamental flaw in the plea process." *State v. Fry*, 2013-Ohio-5865, ¶ 12 (7th Dist.). The Ohio Supreme Court has opined an extraordinary case involves a "clear or openly unjust act." (*Id.*) "The logic behind this precept is to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe." *State v. Caraballo*, 17 Ohio St.3d 66, 67 (1985).

{¶33} Although not raised by the parties, Ohio courts have found a motion to withdraw plea after the sentence is imposed at the sentencing hearing, but before the issuance of the sentencing entry, is nonetheless a postsentence motion to withdraw. *See State v. Bryant*, 2013-Ohio-5105, ¶ 26-28 (10th Dist.), quoting *State v. Hall*, 2003-Ohio-6939, ¶ 10 (10th Dist.) (" '[r]egardless of whether the judgment entry had been filed, sentence had been imposed and appellant was aware that he was going to prison' "); *State v. McComb*, 2009-Ohio-295, ¶ 7 (2d Dist.) ("a motion made after learning of the imminent sentence is considered to be filed after sentencing"); *State v. Surface*, 2009-Ohio-950, ¶ 12 (5th Dist.) ("because appellant's request came after pronouncement of sentence [but before its journalization], we find that the appropriate standard is withdrawal only to correct a manifest injustice"); *State v. Matthews*, 2011-Ohio-1265, ¶ 26 (6th Dist.) ("Where a Crim.R. 32.1 motion is made after the trial court pronounced sentence at the sentencing hearing but before a sentencing judgment is filed, the motion is to be treated as a postsentence motion under the rule"); *State v. Gordon*, 2011-Ohio-1045 (9th Dist.), ¶ 9; *State v. Neely*, 2009-Ohio-2337, ¶ 6 (12th Dist.) ("Appellant's request to withdraw his plea came after pronouncement of sentence, that is, after a sentencing hearing was held and appellant learned what the sentence would be, and, therefore, the appropriate standard is withdrawal only to correct a manifest injustice").

{¶34} In *State v. Leonhart*, 2014-Ohio-5601 (4th Dist.), the Fourth District opined "[t]his precedent is consistent with the objective of the stricter manifest-injustice standard for postsentence motions to withdraw guilty or no contest pleas." *Id.* at ¶ 27, citing *Caraballo* at 67 ("The logic behind the [stricter postsentence standard] is to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe"); *see also Bryant* at ¶ 27, quoting *Hall* at ¶ 10 (" '[t]he purpose of the motion to withdraw a guilty plea after sentence has been

imposed is to correct a manifest injustice, not to allow the defendant to test the weight of potential punishment and, if dissatisfied, withdraw his guilty plea' ").

**{¶35}** We have held a hearing is not required on a Crim.R. 32.1 postsentence plea withdrawal motion if the facts alleged are not sufficient to prove manifest injustice. *State v. Snyder*, 2009-Ohio-4813, ¶ 15 (7th Dist.) (written motion filed). Although cited by neither party, our decision in *State v. Kopnitsky*, 2019-Ohio-5066 (7th Dist.) informs our decision.

**{¶36}** Kopnitsky absconded after entering pleas to numerous third, fourth, and fifth degree felonies, including fourth-degree vehicular assault. He was apprehended roughly ten months after failing to appear at the original sentencing hearing. At the rescheduled sentencing hearing, Appellant represented he fled the jurisdiction because his life was in danger.

**{¶37}** Relevant to this appeal, Kopnitsky orally moved to withdraw his plea immediately after the trial court imposed an aggregate sentence of imprisonment of four years. Kopnitsky argued the oral motion was made to correct manifest injustice, based on statements at the plea hearing that allegedly demonstrated he was not guilty of vehicular assault. He further argued his sentence was "astronomical," based on the "sugar-coated dialogue" and "optimistic picture" painted by the trial court at his plea hearing. The trial court denied the motion at the sentencing hearing.

**{¶38}** On appeal, Kopnitsky argued the trial court should not have denied the oral motion because he demonstrated manifest injustice. In the alternative, Kopnitsky argued the trial court abused its discretion in granting the motion without calling a recess in order to allow Kopnitsky to confer with defense counsel, setting the matter for a hearing, or making further inquiry regarding the claimed manifest injustice.

**{¶39}** With respect to Kopnitsky's substantive argument, we found he failed to support his claim of innocence regarding the vehicular assault conviction, allegedly based on information provided at the plea hearing, citing the length of time that elapsed between the plea and sentencing hearings. We wrote, "[u]ndue delay between the motion and the reason for withdrawal negatively affects credibility and militates against allowing plea withdrawal." *Kopnitsky*, 2019-Ohio-5066, at ¶ 22.

**{¶40}** Next, we relied on the trial court's colloquy with Kopnitsky to reject his characterization of the trial court's demeanor at the plea hearing. The trial court described the charges against Kopnitsky at the plea hearing as not only "serious charges," but "penitentiary-type charges." The trial court further warned Kopnitsky, "if I do send you to prison, it will not be for a weekend vacation." *Id.* at ¶ 18.

**{¶41}** With respect to Kopnitsky's procedural arguments, we observed, "[Kopnitsky] orally moved for plea withdrawal at a hearing, and he did not request a continuance for a further hearing on his motion. One risk of orally moving to withdraw the plea immediately after the sentence is imposed is that the oral motion will not contain sufficient allegations or cite to relevant evidence." *Id.* at ¶ 20.

**{¶42}** While it is true that Appellant undertook the risk we described in *Kopnitsky,* the trial court here did not allow for any elucidation of Appellant's motion. On the other hand, the trial court's reaction, "that's not how this works. It's denied," could be interpreted to mean a written motion was the preferred method. Moreover, Appellant did not request a continuance for a further hearing or file a written motion.

**{¶43}** Relevant to this appeal, the *Kopnitsky* panel opined:

> The sentencing court allowed Appellant to voice his motion at a hearing on the record. *The court was not required to examine him to help him develop his allegations, and Appellant cites nothing supporting such a suggestion. If he had more to say or evidence to submit, he should have filed a written motion and asked for a separate hearing.* Appellant placed his credibility before the court on the record when he made his motion, and he provided no support for his claim of promise or innocence (on the vehicular assault charge or the other three charges). *See Smith*, 49 Ohio St.2d at 264 (credibility, good faith, and weight are subjects for the trial court when ruling on the withdrawal motion).

> Appellant's apparent strategy was what the rigorous standard in Crim.R. 32.1 was designed to prevent: a plan to "test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe." *Caraballo*, 17 Ohio St.3d at 67. *See also Smith*, 49 Ohio St.2d at

264 (the strict post-sentence withdrawal rule "seeks to avoid the possibility of a defendant pleading guilty to test the weight of potential punishment"). Appellant's motion for post-sentence plea withdrawal did not demonstrate this was an "extraordinary" case. *See Smith*, 49 Ohio St.2d at 264. Appellant failed to demonstrate a manifest injustice, and the trial court did not abuse its discretion by denying the plea withdrawal motion as presented to the court.

(Emphasis added) *Kopnitsky*, at ¶ 23-24.

**{¶44}** Unlike Kopnitsky, Appellant had no opportunity to advance any legal argument regarding his oral motion to withdraw his plea, except his desire to have an unidentified male at the hearing testify at trial. However, our resolution of Kopnitsky's procedural challenges to the trial court's decision to overrule the oral motion support the trial court's decision here. First, the *Kopnitsky* panel clearly found the trial court, confronted with an oral motion to withdraw plea at the sentencing hearing, had no obligation to assist Appellant in developing his arguments or to schedule the matter for a hearing. Second, Appellant did not request a hearing on his motion or file a written motion after the sentencing hearing. Finally, the record reveals Appellant believed he could beguile the trial court into imposing a community control sanction. His desire to withdraw his plea was a reaction solely to the imposition of the state's recommended sentence, as his sentence was the only new information he acquired before deciding to withdraw his plea and he was notified of the state's recommended sentence at the plea hearing. Accordingly, we find the trial court did not abuse its discretion in overruling the oral motion.

## CONCLUSION

**{¶45}** For the foregoing reasons, we find Appellant's sole assignment of error is not well-taken, and the March 17, 2025 decision of the Columbiana County Court of Common Pleas overruling Appellant's oral motion to withdraw his plea is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

[Cite as *State v. Chestnut*, 2025-Ohio-4787.]

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**